**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**ARTRICE D. HAUGABROOK,**

Plaintiff,

v.

**VALDOSTA CITY SCHOOLS,**

Defendant.

Civil Action 7:10-CV-60 (HL)

**ORDER**

This case is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 61) and Defendant's Motion for Summary Judgment (Doc. 76). For the reasons outlined below, Plaintiff's Motion is denied, and Defendant's Motion is granted, in part, and denied, in part.

**I.    FACTS[1]**

Plaintiff is a black female. She holds a doctorate in educational leadership, a specialist degree in educational leadership and administration, a master's degree in elementary education, and a bachelor's degree in English literature.

---

[1] One matter should be addressed at the outset of this Order. In her statement of material facts, brief in support of her summary judgment motion, reply brief in support of her summary judgment motion, and response to Defendant's statement of material facts, Plaintiff relies on statements and argument made by Gary Moser, counsel for Defendant, during the preliminary injunction hearing held on July 16, 2010. It is well established, however, that statements made by counsel during argument are not testimony or any other kind of evidence. *See* United States v. Lopez, 649 F.3d 1222, 1237 (11th Cir. 2011); Green v. Sch. Bd. of Hillsborough County, Fla., 25 F.3d 974, 979 (11th Cir. 1994). Plaintiff cannot rely on statements made by opposing counsel to establish her case, and the Court will not consider any statements so made.

She also holds a professional teaching certificate for the State of Georgia, is certified in grades P-8 to teach language arts and social studies, and is certified in educational leadership for grades K-12. (PSOMF, ¶ 1).[2]

Plaintiff began her employment with Defendant in August of 1994 as a seventh grade English teacher at Newbern Middle School. In August of 1998, she was promoted to seventh grade assistant principal of Newbern Middle. Plaintiff became principal of Newbern Middle in July of 2003. From July of 2006 until June of 2008, Plaintiff held the positions of Director of Student Services, Director of Pre-K, and Assistant Director of the Alternative School. In June of 2008, Plaintiff became the Director of Student Support Services, a position in the Central Office. (PSOMF, ¶ 2).

The position of Assistant Superintendent of Operations ("ASO") was created in 2010. (Deposition of William Cason, p. 23). The ASO position, which combined the duties of multiple positions into one, was created pursuant to Defendant's reduction in force policy. (DSOMF, ¶ 36). Dr. Alvin Hudson, who was then serving as principal of Southeast Elementary School, became aware of the ASO position in February or March of 2010, when Superintendent William Cason came to Dr. Hudson's office and told him the position was available. (PSOMF, ¶ 9). Dr. Hudson did not formally interview for the position, but did discuss the

---

[2] "PSOMF" refers to Plaintiff's Statement of Undisputed Material Facts. The cited paragraphs are those admitted by Defendant. "DSOMF" refers to Defendant's Statement of Undisputed Material Facts. The cited paragraphs are those admitted by Plaintiff.

position with Dr. Cason. (Deposition of Alvin Hudson, pp. 11-12). Dr. Cason did not speak with Plaintiff about the ASO position, but did talk to a number of principals, including Dr. Hudson, that Dr. Cason felt might be both interested in and qualified for the position. (Cason dep., pp. 31-32).

Even though Board policy states that "[w]hen vacancies occur in the system at the assistant principal level or above, notices of the vacancies shall be posted on a bulletin board in each school," the ASO position was never advertised. (Deposition of Sheila Mason, Exh. 6; Cason dep., pp. 26-28). Dr. Cason did not obtain express permission from the Board to bypass this policy. (Cason dep., pp. 27-28). However, there has also been in place for many years a practice where certain positions are not posted because a decision to promote internally has been made. (Cason dep., pp. 30-31). For instance, Plaintiff was offered the Director of Student Support Services position without it being posted. (Deposition of Artrice Haugabrook, p. 54). Dr. Cason recommended Dr. Hudson for the ASO position to the Board of Education (the "Board"), and he was approved for that position in April of 2010. (Cason dep., pp. 24-25). Dr. Hudson assumed the ASO position in July of 2010. (Hudson dep., p. 9).

In late March or early April of 2010, Defendant posted a vacancy announcement for the system-wide position of Director of Teaching and Learning ("DTL"), with an application deadline of April 25, 2010. (DSOMF, ¶ 4). In May of 2010, Plaintiff learned she had been demoted from Director of Student Support Services to assistant principal at Sallas Mahone Elementary School. (PSOMF, ¶

4). The demotion was due at least in part to a reduction in force in which the Director of Student Support Services position was eliminated. (DSOMF, ¶ 6). After learning about her demotion, and with Dr. Cason's permission to apply after the deadline, Plaintiff applied for the DTL position. (DSOMF, ¶ 7; Cason dep., p. 57).

After being promoted to ASO, Dr. Hudson was asked by Dr. Cason to serve on the interview committee for the DTL position, along with Sheila Mason, the Director of Human Resources, and Marty Roesch, the Assistant Superintendent of Finance. (PSOMF, ¶ 12). Ms. Mason and Mr. Roesch pre-screened the applications submitted for the position. (Mason dep., pp. 52-53). Plaintiff was one of four persons interviewed for the DTL position. (DSOMF, ¶ 8). Scarlett Correll Brown, who worked closely with the retiring DTL and had been responsible for many of the duties of the DTL, was also interviewed for the position. (Deposition of Scarlett Correll Brown, pp. 17-18, 21-25).[3] Ms. Correll Brown, who is white, discussed the DTL position with Dr. Cason prior to her applying for the position. (Cason dep., pp. 54-55).

The DTL interviews were held on May 20, 2010. The interview panel members evaluated the candidates by rating each in 8 different categories with possible scores from 1-5, with 5 being the highest. The highest score one could

---

[3] While she is referred to in most of the pleadings and documents as Scarlett Correll, she has since married, and is now Scarlett Correll Brown. The Court will refer to her as Ms. Correll Brown.

achieve per panel member was 40, and the highest overall evaluation total one could receive was 120. (DSOMF, ¶ 14). The applicants were also given an overall rating of outstanding, excellent, average, marginal, or unsatisfactory. (Doc. 77-8). Each panel member rated Ms. Correll Brown as "outstanding," and gave her a total overall evaluation score of 120. (Doc. 77-8). Plaintiff was rated "excellent" by each panel member, and given scores of 33, 37, and 34 for an overall total of 104. (Doc. 77-9).  The panel recommended both Plaintiff and Ms. Correll Brown as finalists for the DTL position. (DSOMF, ¶ 17). On June 7, 2007, Dr. Cason recommended Ms. Correll Brown to the Board for the DTL position, but the Board wanted to see her credentials. (PSOMF, ¶ 33). After further discussion by the Board, Ms. Correll Brown was promoted to the DTL position, which is now known as the Assistant Superintendent for Teaching and Learning. (DSOMF, ¶¶ 17, 20, 22).[4]

In June of 2010, Defendant posted a vacancy announcement for the position of 6-12 Curriculum Director ("CD"), and Plaintiff applied for that position. (DSOMF, ¶ 23). On July 30, 2010, Plaintiff was interviewed for the CD position by Dr. Hudson, Ms. Mason, Mr. Roesch, and Ms. Correll Brown, who was then the interim DTL, and who would be the CD's supervisor. (DSOMF, ¶ 24). Plaintiff

---

[4] The title for the DTL position has changed from Director of Teaching and Learning to Executive Director of Teaching and Learning to Assistant Superintendent of Teaching and Learning.

received three overall ratings of "excellent"[5], and scores of 37, 35, 33, and 36, for a total score of 141 out of a possible 160. The lowest score, 33, was given by Ms. Correll Brown. (Doc. 77-17). The panel did not recommend any of the three interviewed candidates to the Superintendent because they did not believe they had the best candidate for the position. (Hudson dep., p. 37; Mason dep., p. 44; Correll Brown dep., pp. 57-58). The CD position was re-posted with a modified job description, and interviews were held on October 27, 2010. Plaintiff and three other applicants were interviewed, including Rodney Bullard. (Doc. 77-21). Mr. Bullard received four overall ratings of "outstanding," and scores of 39, 39, 38, and 39, for a total score of 155 out of 160. (Doc. 77-22).[6] In November of 2010, Dr. Cason recommended to the Board that Mr. Bullard be approved for the CD position. (PSOMF, ¶ 38). On November 8, 2010, the Board voted to approve Mr. Bullard for the CD position. (Doc. 77-24).

On July 7, 2010, Plaintiff filed a Charge of Discrimination with the EEOC. In her charge, Plaintiff alleged discrimination based on race, color, and sex. She specifically alleged that she was demoted because of her race, denied a promotion to the ASO position because of her sex, and denied a promotion to the DTL position because of her race. (Doc. 52-1). Two days later she filed a Petition for Declaratory and Injunctive Relief. (PSOMF, ¶ 5). A preliminary injunction

---

[5] It appears from the exhibits that Mr. Roesch did not give an overall evaluation rating to Plaintiff, which is why she only received three overall ratings.

[6] The evaluations for Plaintiff from the second interview do not appear to be in the record.

hearing was held on July 16, 2010. (PSOMF, ¶ 6). The Court denied the request for preliminary injunctive relief. (Doc. 29).

Plaintiff was permitted to amend her petition after receiving her Notice of Right to Sue letter from the EEOC. (Doc. 43). Plaintiff filed her Amended Petition on April 12, 2011, alleging violations of Title VII, intentional infliction of emotional distress, violations of her equal protection rights, and violations of 42 U.S.C. §§ 1211, 1981, and 1983. Plaintiff also requested punitive damages and an award of attorney's fees. Plaintiff raised specific claims relating to the DTL and ASO positions, as well as her demotion to assistant principal. (Doc. 52).

## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact

does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249–50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Trial Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986))."If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted).

The filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist. Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to

8

judgment as a matter of law." <u>Shaw Constructors v. ICF Kaiser Eng'rs, Inc.</u>, 395 F.3d 533, 538-39 (5th Cir. 2004).

## III.   ANALYSIS

### A.   Failure to Raise Charges in EEOC Complaint

"No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge." <u>Alexander v. Fulton County, Ga.</u>, 207 F.3d 1303, 1332 (11th Cir. 2000) (citing 42 U.S.C. § 2000e-5)). "EEOC regulations provide that charges should contain, among other things, '[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.'" <u>Id.</u> (citing 29 C.F.R. § 1601.12(a)(3)). "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of a charge of discrimination." <u>Id.</u>

"The filing of an administrative complaint with the EEOC is ordinarily a jurisdictional prerequisite to a Title VII action." <u>Chanda v. Englehard/ICC</u>, 234 F.3d 1219, 1225 (11th Cir. 2000). The purpose of the exhaustion requirement "is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." <u>Gregory v. Ga. Dep't of Human Resources</u>, 355 F.3d 1277, 1279 (11th Cir. 2004) (citation omitted). "Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as

the essential basis for the requested judicial review, are not appropriate." Wu v. Thomas, 863 F.2d 1543, 1547 (11th Cir. 1989) (quoting Ray v. Freeman, 626 F.2d 439, 443 (5th Cir. 1980)).

In her EEOC charge filed on July 7, 2010, Plaintiff claimed that she suffered discrimination based on her race with regard to the DTL position; she was demoted because of her race; and she was denied the promotion to ASO because of her sex. Plaintiff's EEOC charge has not been amended or updated.

Defendant contends that Plaintiff's sex discrimination claim raised in her Amended Petition with respect to the CD position and her discrimination claim with respect to the principal and assistant principal positions at Southeast Elementary School must be dismissed because they are outside the scope of Plaintiff's EEOC charge.

The Court agrees that the discrimination claim with respect to the Southeast Elementary positions must be dismissed. Plaintiff does not even argue that the claim should be considered by the Court, and the Court finds that this is a new claim of discrimination that is beyond the scope of what the EEOC would have investigated.[7]

As for the CD sex discrimination claim, the Court finds that it should also be dismissed. Mr. Bullard, a black male, was hired for the CD position on

---

[7] In any event, the claim relating to the positions at Southeast Elementary would fail because the Court cannot find any information in the record about the race of Kim Miller, who was appointed to be the principal, or the race or sex of the assistant principal.

November 8, 2010, which was four months after Plaintiff filed her EEOC charge. Plaintiff's claim that she was not promoted to the CD position because of her sex is a completely new and separate act of discrimination from the claims listed in the EEOC charge. There was nothing in the EEOC charge that would have put Defendant on notice of the CD sex discrimination claim, nor did the EEOC have the opportunity to investigate Plaintiff's allegations relating to the CD position. *See* Stuart v. Jefferson County Dep't of Human Resources, 152 Fed. Appx. 798, 801 (11th Cir. 2005); Wu, 863 F.2d at 1548 ("The purpose of the filing requirement is to insure that the settlement of grievances be first attempted through the office of the EEOC.") (internal quotation and citation omitted); Hedgeman v. Austal, U.S.A., L.L.C., --- F.Supp.2d ---, 2011 WL 2036968, at * 3 (S.D. Ala. 2011) (dismissal of claim for events that had not yet occurred at the time the EEOC charge was filed was appropriate). As noted by Defendant, Plaintiff had ample time to amend her EEOC charge or file a new one in connection with the CD position, but she did not. It is not appropriate for the Court to review this alleged discrimination before the EEOC has had a chance to do so. Ray, 626 F.2d at 442 ("Discrete acts of discrimination which occur after the filing of an EEO complaint must be first reviewed administratively before such acts may serve as the basis for a finding of discriminatory conduct justifying remedial action by the court.")[8]

---

[8] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit

Plaintiff tries to save the CD claim by stating she checked the "continuing violation" box on her EEOC charge, but the continuing violation doctrine does not apply here. That doctrine is a means for a plaintiff to bring an otherwise untimely claim of discrimination where she has alleged a timely claim that is part of an ongoing policy of discrimination. The law is clear that a discrete incident of discriminatory treatment, like the failure to promote, is "its own 'unlawful employment practice' for which administrative remedies must be exhausted." Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002)). As Plaintiff did not exhaust the CD claim prior to filing her Amended Petition, the claim cannot be reviewed by the Court.

Defendant is entitled to summary judgment on Plaintiff's discrimination claim relating to the Southeast Elementary principal and assistant principal positions and the sex discrimination claim relating to the CD position. Those claims are dismissed.

### B.    Title VII/42 U.S.C. § 1981/42 U.S.C. § 1983

Because Plaintiff's claims pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1981 are asserted as parallel remedies for alleged violations of Title VII, the elements of these causes of actions are the same and are subject to the same legal analysis. Underwood v. Perry County Comm'n, 431 F.3d 788, 793 (11th Cir.

---

handed down prior to October 1, 1981.

2005); Stallworth v. Shuler, 777 F.2d 1431, 1433 (11th Cir. 1985) ("Where, as here, a plaintiff predicates liability under Title VII or disparate treatment and also claims liability under sections 1981 and 1983, the legal elements of the claims are identical . . . [and] we need not discuss plaintiff's Title VII claims separately from his section 1981 and section 1983 claims.") Thus, the Court will evaluate each discrimination claim using one framework, regardless of whether the claim is brought under Title VII, § 1981, or § 1983.[9]

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

A plaintiff may prove disparate treatment through the introduction of either direct or circumstantial evidence. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004). Direct evidence is "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption." Id. at 1086 (citation omitted). "Evidence that only suggests discrimination or that is subject to more than one interpretation does not constitute direct evidence." Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir. 1999) (citation omitted). Plaintiff does not argue

---

[9] The Court notes that Section 1981 cannot be the basis for a sex discrimination claim. Section 1981 was enacted to prevent discrimination based on race. See Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960-961 (11th Cir. 1997); Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998) ("It is . . . settled that Section 1981 does not prohibit discrimination on the basis of gender[.]" (citation omitted).

there is direct evidence of discrimination present in the record. Instead, Plaintiff relies on circumstantial evidence to support her sex discrimination claim, which means the Court must conduct an analysis under <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817 (1973).

Under the <u>McDonnell Douglas</u> test, the plaintiff bears the initial burden of establishing a prima facie case. <u>Pennington v. City of Huntsville</u>, 261 F.3d 1262, 1266 (11th Cir. 2001). Once a plaintiff has established a prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for the challenged employment action. <u>Id.</u> If the employer can give an appropriate explanation, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's explanation is merely a pretext. <u>Id.</u> A plaintiff cannot establish pretext by simply demonstrating facts that suggest discrimination, but must specifically respond to the employer's explanation and rebut it. <u>Crawford v. City of Fairburn, Ga.</u>, 482 F.3d 1305, 1309 (11th Cir. 2007). Pretext evidence is that which demonstrates "such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation omitted). It is important to remember that an employer may make an employment decision for a "good reason, a bad reason,  . . . or no reason at all as long as its action is not for a discriminatory reason." <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1030 (11th Cir. 2000) (quotation omitted).

### 1.    Assistant Superintendent of Operations

Plaintiff alleges she was discriminated against on the basis of her sex with regard to the ASO position, which went to Dr. Alvin Hudson, a black male.

Plaintiff contends that Defendant, through the actions of Dr. Cason, knowingly violated its policy of advertising all openings at the assistant principal level or above by failing to advertise the ASO position, which deprived Plaintiff of the opportunity to apply for the position. Defendant admits that the ASO position was never posted. Plaintiff contends Dr. Cason made the decision, without authorization, to "hand-pick" Dr. Hudson, a male, for the position to the exclusion of all other candidates, including Plaintiff, a female.

In order to establish a prima facie case on the basis of a failure to promote, a plaintiff must demonstrate that: (1) she belongs to a protected class; (2) she was qualified for and applied for the position[10]; (3) despite her qualifications, she was rejected; and (4) the position was filled with an individual outside the protected class. Springer v. Convergys Customer Mgmt. Group, Inc., 509 F.3d 1344, 1347 n. 2 (11th Cir. 2007). The Court has already found that Plaintiff established her prima facie case of sex discrimination (*see* Doc. 29, Order on

---

[10] While Plaintiff did not formally apply for the ASO position, the Eleventh Circuit has stated that "where an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show under the second prong that he applied for the position-only that the employer had some reason to consider him for the post." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (11th Cir. 2005).

Plaintiff's Petition for Declaratory and Injunctive Relief), so the Court will move on to the next phase of the McDonnell Douglas test.[11]

The burden now shifts to Defendant to show a legitimate nondiscriminatory reason for not promoting Plaintiff to the ASO position. Defendant's stated reason for not promoting Plaintiff is that she was not qualified for the position due to her lack of experience in areas such as transportation and supervision of principals. This is a legitimate nondiscriminatory reason for not promoting Plaintiff to the ASO position. See James v. Dep't of Veterans Affairs, 778 F.Supp.2d 1249, 1254 (W.D. Okla. 2011) (older candidate not being qualified for position was nondiscriminatory reason for employer to select younger candidate).

Plaintiff must now establish that Defendant's nondiscriminatory reason is pretextual. She contends that Defendant's failure to follow Board policy by not posting the ASO position is evidence of pretext. The Court disagrees. The law in the Eleventh Circuit is clear that preselection of a candidate or a failure to post a job, even in violation of company policy, does not necessarily indicate discrimination. See Springer, 509 F.3d at 1350 ("[E]ven where preselection violates corporate personnel policies, it does not necessarily indicate racial

_____

[11] While Defendant contends Plaintiff was not promoted to the ASO position because she was not qualified, the Court cannot consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case. See Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 575 (6th Cir. 2003) (en banc). If the Court were to do so, the burden-shifting scheme would collapse, as the first prong of the McDonnell Douglas test would be subsumed into the second. Defendant's contention on summary judgment that it did not promote Plaintiff because she was not qualified does not affect the Court's previous finding that Plaintiff has established a prima facie case of sex discrimination.

discrimination."); <u>Nance v. Ricoh Elec., Inc.</u>, 381 Fed. Appx. 919, 922 (11th Cir. 2010) ("Even if the position was not posted, however, we have held that the failure to post a job, 'even where preselection violates corporate personnel policies, . . . does not necessarily indicate racial discrimination.'"); <u>Alexander v. Baldwin County Bd. of Educ.</u>, No. 07-0333-CB-C, 2008 WL 3551194, at *7 (S.D. Ala. Aug. 12, 2008) (preselection alone is not evidence of pretext or discriminatory intent).

Further, it cannot be ignored that Plaintiff herself has received the benefit of being promoted to an unadvertised position. Thus, both males and females have benefitted from the departure from policy about which Plaintiff complains, and obviously Plaintiff was aware that Defendant did not always post open positions.

The facts before the Court are much like those in <u>Springer</u>, 509 F.3d at 1344, where the plaintiff, a black female, claimed racial discrimination when a white female co-worker was allegedly handpicked for a non-posted promotion. The plaintiff argued that pretext could be inferred from the pre-selection of the white candidate without the internal posting of the position required by corporate policy. <u>Id.</u> at 1350. The Eleventh Circuit noted that a corporate personnel policy violation did not necessarily indicate discrimination, and also that the plaintiff was aware that the company, despite its policy, did not always post available positions. <u>Id.</u>

More importantly for purposes of this case, the court held that "[w]here a supervisor has first-hand knowledge of the potential applicants and makes an employment decision based on that knowledge, the failure to post the job is insufficient evidence of pretext." Id.

> Patrice London was familiar with the work of the four Operations Managers who were candidates for the available position because she had directly supervised them in her role as a Director. Posting the position would have been superfluous to her decision making process. 'If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.' Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004). Patrice London's preselection of Susan Johnson for the position of Senior Operations Manager reflected her knowledge of the candidates' experience and qualifications and the client's specific needs for the position. Plaintiff has provided no evidence that the failure to post the position was based on racial animus or an intent to deny the African American Operations Managers the opportunity to apply for the promotion.

Id.

Dr. Cason testified during his deposition that he chose Dr. Hudson for the ASO position because he "had known Alvin Hudson for a number of years as principal. I knew his capabilities. He was the best person for the job where he [sic] did not have, in my opinion, appropriate time to go out and seek persons of greater ability from outside the district. He was the best person inside the district to fill the job. There was no need to advertise [the position], and that's how it was explained to the board." (Cason dep., pp. 26-27). He spoke with other people whom he thought might be interested in the position and who might be qualified

for the position. (Cason dep., p. 32). Like Ms. London in the <u>Springer</u> case, Dr. Cason made his employment decision based on his first-hand knowledge of the candidates. Plaintiff certainly has not shown that the failure to post the position was based on an intent to deny a woman the chance to apply for the position. As Dr. Cason had experience with both Plaintiff and Dr. Hudson, and he based his decision on that experience, failure to post the ASO position is insufficient evidence of pretext.

In order to survive summary judgment, Plaintiff must show pretext. The only evidence to which she has pointed to establish pretext is the failure to post the ASO position, but that is insufficient to carry Plaintiff's burden. The decision to promote Dr. Hudson was a reasonable business decision, and "'a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason as long as the reason is one that might motivate a reasonable employer.'" <u>Id.</u> (quoting <u>Pennington</u>, 261 F.3d at 1267 (citation and internal quotation marks omitted)). Defendant is entitled to summary judgment on Plaintiff's sex discrimination claim. Plaintiff's motion on the sex discrimination claim is denied.

### 2.    Director of Teaching and Learning

Plaintiff alleges she was discriminated against on the basis of her race with regard to the DTL position, which went to Scarlett Correll Brown, who is white.

Plaintiff relies on circumstantial evidence to support her race discrimination claim, so the <u>McDonnell Douglas</u> burden-shifting analysis is again in play. The

Court has already found that Plaintiff established her prima facie case of race discrimination (*see* Doc. 29, Order on Plaintiff's Petition for Declaratory and Injunctive Relief), and Defendant concedes for purposes of summary judgment that Plaintiff has established a prima facie race discrimination case, so the Court will move on the next phase of the <u>McDonnell Douglas</u> test.

The burden now shifts to Defendant to show a legitimate nondiscriminatory reason for not promoting Plaintiff to the DTL position. As discussed in greater detail in the Facts section, and in connection with the pretext prong of the <u>McDonnell Douglas</u> test, the interview panel found Ms. Correll Brown to be more qualified for the DTL position than Plaintiff, as did Dr. Cason, who recommended Ms. Correll Brown for the position. Defendant has provided a legitimate nondiscriminatory reason for not promoting Plaintiff to the DTL position. *See also* <u>Bryant v. Dougherty County Sch. Sys.</u>, 382 Fed. Appx. 914, 918 (11th Cir. 2010) (finding that one candidate receiving the most recommendations from the interview committee was a legitimate, non-discriminatory reason for not promoting the plaintiff).

Plaintiff must now establish that Defendant's nondiscriminatory reason is pretextual. She has not done so. In a non-selection case, the plaintiff cannot establish pretext by "simply arguing or even by showing that [she] was better qualified" than the selectee. <u>Springer</u>, 509 F.3d at 1349 (quotation omitted). Here, Plaintiff argues that Ms. Correll Brown was unqualified for the DTL position, or alternatively that Plaintiff was more qualified for the position.

Federal courts do not sit "as a super-personnel department that reexamines an entity's business decisions. . . ." <u>Elrod v. Sears, Roebuck & Co.</u>, 939 F.2d 1466, 1470 (11th Cir. 1991). Disparities in qualifications "must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." <u>Cooper v. S. Co.</u>, 390 F.3d 695, 732 (11th Cir. 2004), *overruled in part on other grounds*, <u>Ash v. Tyson Foods</u>, 546 U.S. 454, 126 S.Ct. 1195 (2006).

Ms. Correll Brown has a bachelor of science degree in psychology, a master's degree in education, and a specialist degree in school psychology. She holds a certificate in leadership. She has worked in various school systems since 1998, serving as a special education teacher, a school psychologist, and a director of professional learning.[12] While Plaintiff has worked in the school system for five more years than Ms. Correll Brown and also has a doctorate, the Court finds that Plaintiff's experience and advanced degree do not make her such a superior candidate that no reasonable person could hire Ms. Correll Brown instead of Plaintiff. Importantly, Ms. Correll Brown had experience with Georgia Performance Standards ("GPS") alignment, testing, and curriculum design, all of which were listed qualifications for the DTL position. Actual on-the-job related experience does count for something.

---

[12] The titles held by Ms. Correll Brown while in the last position changed, but the job duties and responsibilities remained generally the same. (Correll Brown dep., pp. 16-18).

Plaintiff contends that Ms. Correll Brown does not have the required leadership experience for the DTL position. The job description for the DTL position states that "a minimum of 10 years of leadership and/or teaching experience is required." The Court previously found that Ms. Correll Brown met the ten year requirement between her teaching and her work as a school psychologist, and that decision remains correct. When the time spent in the professional learning director position is included, it is clear to the Court that Ms. Correll Brown met the ten year requirement. While Ms. Correll Brown did testify on one occasion with regard to the school psychologist position, "I'm not saying that it's a leadership position," (Correll Brown dep., p. 31), the job description did not require 10 years in a "leadership position," just a combination of leadership experience and teaching experience. Ms. Correll Brown testified that she coordinated the student support team for the school district. She coordinated and worked with the preschool special education program. She was the 504 contact and chairperson for the school district. Ms. Correll Brown also facilitated and led implementation of response to intervention within the school district. (Correll Brown dep., pp 31-32). In the Court's opinion, these are all activities involving some form of leadership.

In addition, Plaintiff has not shown that the interview panel's determination that Ms. Correll Brown was more qualified for the DTL position was pretextual. Plaintiff has not shown that the panel members' rankings were a mask for their discriminatory objectives. Denney v. City of Albany, 247 F.3d 1172, 1185 (11th

Cir. 2001) ("[A]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII or other federal employment discrimination statutes.") Utilization of subjective factors in making an employment decision is not improper. Id. Ms. Correll Brown and Plaintiff were ranked in eight areas, and the questionnaire used to rank the candidates is race-neutral on its face. Ms. Correll Brown was rated higher than Plaintiff by all three panel members in the areas of: (1) "Is a creative and visionary thinker;" (2) "Is able to communicate effectively and in an organized manner in face-to-face situations; does not seem at a loss for words;" and (3) "Shows evidence of the ability to handle pressure." (Docs. 77-8; 77-9). There was a concern about Plaintiff's lack of GPS knowledge, which was a requirement for the position. (Doc. 77-9). Ms. Correll Brown, on the other hand, was familiar with GPS alignment and testing. (Mason dep., p. 55). During the preliminary injunction hearing, Dr. Hudson reeled off a list of Ms. Correll Brown's qualifications, noting that "she has worked extensively with the K-12 curriculum and her understanding of the Georgia Performance Standards at all levels is highly regarded"; that she "has work[ed] extensively [with GPS alignment]. She has a good background with the Georgia Performance Standards, implementing those standards and sharing strategies on how to implement those standards"; and that she was responsible for test coordination in the school system.[13]

_____

[13] Plaintiff herself has served on similar interview panels during the course of her

Further, Dr. Cason articulated non-discriminatory reasons for choosing Ms. Correll Brown over Plaintiff, none of which have been rebutted and shown to be pretextual by Plaintiff. Specifically,

> [Ms. Correll Brown] has teaching experience. She has leadership experience, experience through working as a psychologist in the school district. She has a thorough knowledge of curriculum design, better than anyone else in the district. She has knowledge of GPS alignment better than anyone else in the district, and she models the best practices, just as we do throughout the district.

(Cason dep., p. 98).

With regard to the DTL position, Plaintiff has not "demonstrated such weaknesses, implausibilities, inconsistences, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action[s] that a reasonable factfinder could find them unworthy of credence." Ash v. Tyson Foods, Inc., 664 F.3d 883, 892 (11th Cir. 2011) (quotation omitted). In sum, Plaintiff has not shown that Defendant's proffered reasons were pretextual. Defendant is entitled to summary judgment on the race discrimination claim related to the DTL position. Plaintiff's summary judgment motion on this issue is denied.

---

employment with Defendant, and testified that panel members use their years of experience and intelligence to find out whom, among the interviewees, is the best candidate for the particular position. (Haugabrook dep., pp. 27-30). In her experience, after conducting interviews, the panel members discuss their respective observations and opinions of the person interviewed with the ultimate goal of recommending the best candidate to the Superintendent. (Haugabrook dep., pp. 30-31). The panel then recommends the person it believes is the best choice of the applicants for the position to the Superintendent, and if the Superintendent agrees with the panel, then he recommends the panel's choice to the Board for hiring. (Haugabrook dep., p. 29).

### 3.    Demotion

Plaintiff also alleges in Count I of her Amended Petition that her demotion from Director of Student Support Services to assistant principal was discriminatory. The Court has closely reviewed the parties' summary judgment motions and finds that neither party properly moved for summary judgment on the demotion claim. While Plaintiff discusses the facts surrounding the demotion, at no point does she make the required <u>McDonnell Douglas</u> analysis for the demotion claim. Defendant does not address the demotion claim at all in its summary judgment motion.

It appears to the Court that the demotion claim simply fell through the cracks for both parties. Accordingly, the parties will be allowed another opportunity to move for summary judgment on the discriminatory demotion claim. The parties shall file any dispositive motions on the discriminatory demotion claim not later than May 7, 2012. No extensions of that deadline will be granted.

### C.    42 U.S.C. § 1211

Plaintiff alleges in Count II of her Amended Petition a discrimination claim based on 42 U.S.C. §§ 1211, *et seq.*, the Americans with Disabilities Act. Defendant moves for summary judgment on the basis that Plaintiff has not shown any evidence of a disability. Plaintiff concedes she is not disabled. Therefore, Defendant is entitled to summary judgment on Count II. To the extent Plaintiff has moved for summary judgment in her favor on Count II, the motion is denied.

### D.    Intentional Infliction of Emotional Distress

Count III of Plaintiff's Amended Petition alleges intentional infliction of emotional distress. To recover on such a claim, a plaintiff must show evidence that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) a causal connection existed between the wrongful conduct and the emotional distress; and (4) the emotional harm was severe. Abdul-Malik v. AirTran Airways, Inc., 297 Ga. App. 852, 855-56, 678 S.E.2d 555 (2009).

Plaintiff alleges Defendant's actions in demoting her and not promoting her caused her "to suffer and endure a severe stigma on her personal and professional reputation in the eyes of her colleagues and peers," and also have caused her to "suffer from sleepless nights and caused her episodic high blood pressure." (Doc. 52, Pl. Am. Pet., ¶¶ 11.2, 11.4).

Extreme and outrageous conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 856 (quoting Biven Software v. Newman, 222 Ga. App. 112, 113-114(1), 473 S.E.2d 527 (1996) (citation and punctuation omitted)). "The rule of thumb in determining whether the conduct complained of was sufficiently extreme and outrageous is whether the recitation of the facts to an average member of the community would arouse her sentiment against the defendant so that she would exclaim, 'Outrageous!'" Wilcher v. Confederate Packaging, Inc.,

287 Ga. App. 451, 453, 651 S.E.2d 790 (2007). "Whether actions rise to the level of extreme and outrageous conduct necessary to support a claim of intentional infliction of emotional distress is generally a question of law." Abdul-Malik, 297 Ga. App. at 856 (citing Yarbray v. S. Bell Tel., etc. Co., 261 Ga. 703, 706(2), 409 S.E.2d 835 (1991)). "If the evidence shows that reasonable persons might find the presence of extreme and outrageous conduct and resultingly severe emotional distress, the jury then must find the facts and make its own determination." Yarbray, 261 Ga. at 706.

Plaintiff contends that a determination of whether Defendant's actions were outrageous is for the jury. The Court disagrees. In the Court's opinion, reasonable persons would not find Defendant's conduct towards Plaintiff atrocious or intolerable. The fact that audience members at the injunction hearing may have gasped aloud when Dr. Richardson testified has no relation to Defendant's actions toward Plaintiff. Those gasps were directed at Dr. Cason's alleged statement to Dr. Richardson about Dr. Richardson.

The termination of an employee generally is not extreme and outrageous conduct, no matter how stressful the termination is for the employee. See Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1229 (11th Cir. 1993); Anderson v. Dunbar Armored, Inc., 678 F.Supp.2d 1280, 1331-32 (N.D. Ga. 2009) (termination of employee was not outrageous). While Plaintiff was demoted and not promoted, rather than terminated, the general rule still applies, and Plaintiff has shown no reason for a departure from that rule.

Further, Plaintiff has not established that she suffered severe emotional distress or harm. Emotional distress "includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." Abdul-Malik, 297 Ga. App. at 858 (internal quotation marks omitted). The emotional distress must be "so severe that no reasonable [person] could be expected to endure it." Id. (alteration in original) (internal quotation marks omitted). "Whether severe emotional distress can be found, based on the evidence presented, is a question for the court to decide." Id. Sleeplessness, episodic high blood pressure, and embarrassment simply are not so severe that no reasonable person could be expected to endure them. In addition, Plaintiff has presented no evidence that she was required to take any medication or seek any professional help as a result of Defendant's actions. As Plaintiff has not shown severe emotional harm, her intentional infliction of emotional distress claim cannot stand. *See also* Southland Propane, Inc. v. McWhorter, 312 Ga. App. 812, 820, 720 S.E.2d 270 (2011) (emotional distress claim failed where the plaintiff did not present any evidence that the defendants' conduct caused him to take medication or seek medical or psychological help); Abdul-Malik, 297 Ga. App. at 858(1) (no severe distress where the plaintiff suffered only sleeplessness and weight gain and did not take medication or seek professional help); Odem v. Pace Acad., 235 Ga. App. 648, 656(2), 510 S.E.2d 326 (1998) (emotional distress was not sufficiently severe

where the plaintiff suffered marginally high blood pressure but sought no professional advice).

Defendant is entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim. Plaintiff's motion on this claim is denied.

### E.   Equal Protection

Count IV of Plaintiff's Amended Petition is an equal protection claim. Plaintiff contends she is a "class-of-one" who was intentionally treated differently than Ms. Correll Brown, Dr. Hudson, and Mr. Bullard based on her race and sex, respectfully, and there was no rational basis for her treatment.

Defendant argues that the equal protection claim must fail based on the Supreme Court's ruling in Engquist v. Oregon Dep't of Agriculture, 553 U.S. 591, 128 S.Ct. 2146 (2008), in which the Court held that a class-of-one equal protection claim is not cognizable in the context of public employment. The Court agrees.

In Engquist, the plaintiff brought a "class-of-one" claim against her employer, alleging she was terminated for "arbitrary, vindictive, and malicious reasons." Id. at 595. The Supreme Court noted that the "class-of-one theory of equal protection-which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review-is simply a poor fit in the public employment context." Id. at 605. Because "government agencies are charged by law with doing particular tasks [and] hire employees who can perform those tasks as effectively and

efficiently as possible," the Court reasoned that "allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that . . . state officials are entrusted to exercise." Id. at 603. The Court accordingly held that the class-of-one theory does not apply in the public employment context.

Since Plaintiff is a public employee with the school district, her class-of-one theory, that she was intentionally treated differently, is not available. *See also* Pignanelli v. Pueblo Sch. Dist. No. 60, 540 F.3d 1213, 1220 (10th Cir. 2008) (plaintiff's class-of-one claim for loss of employment with school district failed in light of Engquist); Valenti v. Torrington Bd. of Educ., 601 F.Supp.2d 427, 439-40 (D.Conn. 2009). Defendant is entitled to summary judgment on Plaintiff's equal protection claim. To the extent Plaintiff moved for summary judgment in her favor on the equal protection claim, that request is denied.[14]

### F.   Punitive Damages

Plaintiff concedes that a governmental entity like Defendant cannot be held liable for punitive damages. Therefore, summary judgment in Defendant's favor is appropriate on Count VII of Plaintiff's Amended Petition.

---

[14] Plaintiff makes what amounts to a throwaway argument in her response to Defendant's summary judgment motion that she is not a class of one, but belongs to an identifiable group. The entirety of this argument is three sentences long with no analysis or citations. It is not the Court's responsibility to create arguments or find support for the parties' contentions. Plaintiff's Amended Petition alleged that she was treated differently than other employees in violation of the Equal Protection Clause, which is a class-of-one claim. The Court will not consider the newly raised identifiable group claim on summary judgment.

### G.    Attorney's Fees

In Count VIII of her Amended Petition, Plaintiff requests attorney's fees pursuant to 42 U.S.C. § 1988. Because the discriminatory demotion claim has yet to be resolved, the fees request cannot be dismissed out of hand as requested by Defendant, but also cannot be granted as presumably desired by Plaintiff. Of course, Plaintiff is not entitled to recover fees for any of the claims on which the Court has ruled in Defendant's favor. Thus, Plaintiff's summary judgment motion is denied on the fees issue. Defendant's motion is granted, in part, and denied, in part. The motion is denied as to the fees request for the demotion claim. The parties should address the § 1988 fees claim as it relates to the demotion claim as part of their dispositive motions on that claim.

## IV.    CONCLUSION

For the reasons discussed above, the Court rules as follows: Plaintiff's Motion for Summary Judgment (Doc. 61) is denied in its entirety. Defendant's Motion for Summary Judgment (Doc. 76) is granted, in part, and denied, in part. Any dispositive motions on Plaintiff's discriminatory demotion claim and § 1988 attorney's fees claim related to the demotion claim are to be filed no later than May 7, 2012.

**SO ORDERED**, this the 22nd day of March, 2012.

*/s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

mbh